U. S. DISTRICT COURT
WESTERN DISTRICT of LOUISIANA
RECEIVED - ALEXANDRIA

APR 1 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JOYCE BORDELON,
           Appellant

VERSUS

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,
           Appellee

CIVIL ACTION
SECTION "P"
NO. CV06-476-A

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Joyce Bordelon filed an application for disability insurance benefits ("DIB") on March 8, 2004, alleging a disability onset date of January 5, 2003 (Tr. p. 79) due to a back injury and depression (Tr. p. 96). That application was denied by the Social Security Administration ("SSA").

A de novo hearing was held before an administrative law judge ("ALJ") on July 27, 2005, at which Bordelon appeared with her attorney and a vocational expert ("VE") (Tr. pp. 212-232). The ALJ found that, although Bordelon suffers from "severe" degenerative disc disease, cervical spondylosis, and carpal tunnel syndrome, she has the residual functional capacity to perform light work with limited fingering and, therefore, a finding of "not disabled" was directed by Rule 202.14 of the Medical-Vocational Guidelines of Appendix 2, Subpart P, Regulations No. 4 ("the grids"), through the date of the ALJ's decision on September 15, 2005 (Tr. pp. 20-21).

Bordelon requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's

decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Bordelon next file this appeal for judicial review of the Commissioner's final decision. Bordelon raises the following issues for judicial review:

> 1. Substantial evidence does not support the ALJ's finding that Bordelon can perform light work with limited fingering.
>
> 2. The ALJ's use of the Medical-Vocational Guidelines, despite the presence of significant non-exertional impairments, violates the Social Security Act and regulations.

The Commissioner filed a brief in response to Bordelon's appeal. Bordelon's appeal is now before the court for consideration.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not

involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Eligibility for DIB</u>

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an

3

application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

Dr. Vanda Davidson, an orthopaedic surgeon, examined and treated Bordelon for her back pain in March 2003. (Tr. p. 162). Bordelon reported injuring her back when she bent over and lifted something at work.  Bordelon was initially treated by Dr. Plauche (Tr. pp. 209-211), who referred her to Dr. Davidson.  Bordelon did not have pain radiation into her legs or spasms in her legs, and reported that forward and backward bending aggravated her pain, but sitting or standing in one place calmly relieved the pain and medication also relieved the pain (Tr. p. 162).  Dr. Davidson found she had a normal but slow gait, tenderness in the lower back, mostly on the left, had positive straight leg rases bilaterally, worse on the left (Tr. pp. 161-162).  X-rays of Bordelon's lumbar spine showed a failure of fusion defect at the lumbosacral level,

4

and an MRI showed a subligamentous bulge of the T-12/L-1 intervertebral disc, a little more left than right; Dr. Davidson suspected the bulge was part of the pain and spasm problem (Tr. p. 161). Physical therapy aggravated Bordelon's symptoms (Tr. pp. 160-161, 209). A subsequent MRI showed a left central bulge at T-1/L-1 with minimal mass effect, but a protrusion on L-5/S-1 that was causing radiating back pain (Tr. p. 159). Epidural steroid injections also did not give Bordelon any relief (Tr. p. 159). Dr. Davidson recommended light duty work for Bordelon (Tr. p. 158).

Dr. Davidson ordered an additional MRI of Bordelon's cervical spine in March 2005, which showed moderate cervical spondylosis at C5-6 with moderate bilateral bony neuroforaminal narrowing, mild cervical spondylosis at C6-7 with mild bilateral bony neuroforaminal narrowing, and no soft disc herniations in the cervical spine (Tr. pp. 204-205).

Bordelon was also evaluated and treated by Dr. Arsham Naalbandian, a neurologist (Tr. p. 147). In May 2003, Bordelon reported to him that she hurt her back on December 28, 2002, and that she started developing pain and numbness in her arms in about April 2003 (Tr. p. 151). Dr. Naalbandian found essentially normal strength in Bordelon's upper and lower extremities and hand muscles, although there was some diminished sensation in the middle three fingers of her right hand, and some tenderness in the suprascapular region on the right side without significant

5

limitation of cervical spine movements (Tr. pp. 152-153). An EMG and nerve conduction velocity study showed a mild degree of bilateral carpal tunnel syndrome, with some pain and paresthesias intermittently in her arms, more on the right (Tr. p. 147).

In July 2003, Dr. Melanie Firmin examined Bordelon on referral from Dr. Davidson (Tr. p. 164). Dr. Firmin found the MRI showed a disc protrusion at L5/S1 and administered epidural steroid treatments, which provided only transient relief (Tr. pp. 164, 208).

In October 2003, Dr. Davidson noted Bordelon had significant arthritis in her back without evidence of severe nerve root compression or damage, so he continued to recommend conservative treatment, prescribing Lortab, Neurontin, and Zanaflex (Tr. p. 158). Dr. Davidson noted Bordelon was limited by pain in the back area (Tr. p. 158).

Dr. Anthony Amigo treated Bordelon for depressive symptoms relating to her back pain in October 2003; Dr. Amigo prescribed Lexapro which seemed to work (Tr. p. 166). Dr. Amigo stated in March 2004 that Bordelon had a fairly intact memory with sustained concentration and good social interaction, and was doing fairly well with her depression symptoms and did not see where she would have any trouble with work-related physical activities, but stated he would defer to her orthopedic surgeon for evaluation of her low back symptoms should be able to work insofar as her mental status

was concerned (Tr. p. 166).

In February 2004, Dr. Davidson noted Bordelon was not able to return to her past work where she was injured (as a cook) and was not able to do anything above sedentary work or some light duty work if it was carefully scrutinized (Tr. p. 207).

Bordelon was examined by Dr. Jason Beasley in May 2004; Dr. Beasley found Bordelon ambulated slowly but without difficulty, her grip strength was greatly decreased on the right due to carpal tunnel syndrome (4+/5 on the left and 3+/5 on the left), her upper and lower extremity strength were both 4+/5, straight leg raises were positive bilaterally, she had a limited range of motion in her spine, and she was depressed (Tr. p. 170).

At the July 2005 administrative hearing (Tr. pp. 212-232), Bordelon testified she was 52 years old, 5'2" tall, weighed 120 pounds, has a high school education, can read, write, and do basic math, and has past relevant work as a cook and a housekeeper in a nursing home (Tr. pp. 216-217). Bordelon was injured while at work on January 5, 2003, and has not worked since then (Tr. pp. 224-225); she settled a worker's compensation claim on December 24, 2003 (Tr. pp. 69-73, 217). Bordelon testified she became depressed when she was confined to her house for a while after she was injured (Tr. p. 227). Bordelon testified she is right-handed and has numbness and some loss of strength in her right hand due to carpal tunnel syndrome (Tr. p. 218).

Bordelon testified that, on a normal day, she rises at about 8 a.m., tries to do a little housework, and does grocery shopping with her husband, but does not carry the bags into the house (Tr. p. 218). Bordelon testified she drives very little due to back and neck pain (Tr. p. 217). Bordelon testified that she takes medicine to help her sleep all night (Tr. p. 218), her appetite is fairly good, she goes to church, she is not able to do yard work, and she cannot do crocheting due to problems with her arm (Tr. p. 219). Bordelon testified that she has constant burning pain in her lower back, her neck hurts when she turns her head, mostly to the right, and her right arm hurts (Tr. p. 219). Also, pain radiates from her back to her legs (Tr. p. 228).

Bordelon testified she can no longer do the work she did in the past (Tr. p. 220); she used to lift up to fifty pounds a day (Tr. p. 225). Bordelon testified she might be able to walk one block, can stand or sit for fifteen to twenty minutes, can get up from a chair and move around, can raise her arms over her head but cannot reach for and grasp something over her head, does not think she can lift ten pounds for a limited time, does not have a full range of motion in her right hand, does not have a good ability to concentrate, and does not do well around noise and crowds (Tr. pp. 221-223). Bordelon also testified that she cannot pick up coins with her right hand, has trouble holding objects like a coffee cup in her right hand, and has difficulty turning faucets with her

8

right hand (Tr. p. 226). Bordelon testified she does not have any income other than her husband's disability check (Tr. p. 223).

The VE testified that Bordelon's past relevant work as a cook (skilled work) and a housekeeper (semi-skilled work) in a nursing home was medium level work (Tr. pp. 228-229). In response to a hypothetical question involving a person with Bordelon's age, education, and work experience, with a residual functional capacity for light work, limited to simple, repetitious tasks, and with a very limited ability to finger or manipulate to get a good grip with both hands, the VE testified there were no jobs which that person could do (Tr. pp. 229-230). When the hypothetical question was changed to include sitting, standing, or walking for up to six hours per day, with scheduled and unscheduled breaks, there were no jobs such a person could do (Tr. p. 230). Finally, the VE testified that, even if the person was limited to sedentary level work, there still would not be any jobs the person could do (Tr. p. 230).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Bordelon (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4)

9

is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

Residual Functional Capacity and Nonexertional Impairments

Bordelon contends substantial evidence does not support the ALJ's finding that she can perform light work with limited fingering. Bordelon argues that, since she has diminished sensation and grip strength in her hands, making it difficult for her to hold or grasp items with her dominant right hand, she cannot do light work. Bordelon further contends the medical evidence indicates she can only do sedentary work due to her failed fusion

at the lumbosacral level, paraspinous muscle spasms, a limited range of motion in the lumbar spine, positive straight leg raises, and significant arthritis in her back. Therefore, her nonexertional impairments made it inappropriate for the ALJ to rely on the medical-vocational guidelines.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that she is unable to perform her usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

When the ALJ found that Bordelon could not return to her past relevant work, the burden shifted to the Commissioner to show that Bordelon can perform other work in the national economy. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The law provides that

11

the Commissioner can meet that burden if she can prove that
Bordelon's residual functional capacity, age, education and
previous work experience match those set out in any "Rule" of the
Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P,
App. 2 ("the grids") that directs a conclusion that the claimant is
not disabled.  Sec. 200.00(a) of Appendix 2 states this as follows:

> "Where the findings of fact made with respect to a
> particular individual's vocational factors and residual
> functional capacity coincide with all of the criteria of
> a particular rule, the rule directs a conclusion as to
> whether the individual is or is not disabled."

The U.S. Supreme Court has upheld the use of these Guidelines
by the Commissioner in lieu of calling a vocational expert to
testify.  Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76
L.Ed.2d 66 (1983).  Also, Harrell v. Bowen, 862 F.2d 471, 478 (5th
Cir. 1988).

Generally, the Guidelines may not be applied when a claimant
suffers solely from a nonexertional impairment.  Pate v. Heckler,
777 F.2d 1022, 1026 (5th Cir. 1985), citing Martin v. Heckler, 748
F.2d 1027, 1034-35 (5th Cir. 1984).  Also, Broussard v. Bowen, 828
F.2d 310, 313 (5th Cir. 1987); Fields v. Bowen, 805 F.2d 1168, 1170
(5th Cir. 1986).  Since the Guidelines are predicated on an
individual's having an impairment which manifests itself by
limitations in meeting strength requirements of jobs, they may not
be fully applicable where the nature of an individual's impairment
does not result in such limitations, e.g. certain mental, sensory,

or skin impairments.  The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.  20 C.F.R. Subpt. P, App. 2, §200.00(e).  Broussard v. Bowen, 828 F.2d 310, 313 (5th Cir. 1987).

There are two exceptions to these general precepts. First, even when a claimant has a nonexertional impairment, the Commissioner may nevertheless rely exclusively on the grids to determine whether work exists in the national economy which claimant can perform if (a) the ALJ determines that the nonexertional impairment does not significantly affect the claimant's residual functional capacity, and (b) substantial evidence supports that determination.  Newton v. Apfel, 209 F.3d 448, 458 (5th Cir.2000), citing Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987).  Second, even when a claimant's residual functional capacity is so significantly affected by a nonexertional impairment as to preclude resort to the grids for a disability determination, the grids may nevertheless be consulted as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."  20 C.F.R. pt. 404, subpt. P, app.2, § 200.00(§ e)(2)(2001).

Thus, the Guidelines can be used to determine disability, provided that the nonexertional impairments do not significantly diminish the claimant's residual capacity to perform the activities

13

listed in them.   <u>Evans v. Chater</u>, 84 F.3d 1054, 1056 (8th Cir.
1996), and cases cited therein.

For cases at the administrative law judge hearing level, the
ALJ has the responsibility for deciding a claimant's residual
functional capacity.   20 C.F.R. § 404.1546, § 416.946.   The ALJ
must perform a "function-by-function" assessment of the claimant's
ability to engage in work-related activities when making his RFC
determination.   SSR 96-8p.   When making the residual functional
capacity determination an ALJ must consider objective medical
facts, diagnoses and medical opinion based on such facts, and
subjective evidence of pain or disability testified to by the
claimant or others.   20 C.F.R. § 404.1545(a).   Moreover, the ALJ
must specify the evidentiary basis for his residual functional
capacity determination.   SSR 96-8p.   <u>Myers v. Apfel</u>, 238 F.3d 617,
620 (5th Cir. 2001).

In specifying the evidentiary basis of her residual functional
capacity assessment for Bordelon, the ALJ misquoted and
misinterpreted the evidence, stating (Tr. pp. 16-17),

"Dr. Davidson, claimant's treating orthopedist, opined
the claimant was not able to return to the job of injury
but could work at the sedentary or light duty level.

"Dr. Amigo, claimant's treating physician, opined the
claimant would have not difficulty with work related
activities, such as prolonged sitting or standing,
walking or carrying any objects.

"A   claims   examiner   affiliated   with   Disability
Determination Services opined the claimant could
lift/carry twenty pounds occasionally and ten pounds

14

frequently.  The claimant can sit, stand and walk six hours in an eight-hour day."

In  fact,  Dr.  Davidson,  who  was  Bordelon's  treating orthopedist, stated in February 2004 that Bordelon was not able to do anything above sedentary work or some light duty if it was carefully scrutinized (Tr. p. 207).  Dr. Amigo, who *only* treated Bordelon for depression, stated Bordelon was doing fairly well with her depression symptoms and did not see where she would have any trouble with work-related physical activities, but stated he would defer to her orthopedic surgeon for evaluation of her low back symptoms (Tr. p. 166).

Finally, the ALJ erred in relying on the disability examiner's opinion that Bordelon can perform light work.  Pursuant to 20 C.F.R. § 404.1527(d), an examining physician's opinion should be given more weight than a non-examining physician's opinion.[1]  Also, Carry v. Heckler, 750 F.2d 479, 484 (5th Cir. 1985)("The opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician.").  An acceptable

---

[1] Section 404.1527(d) and 416.927(d) of 20 C.F.R. state: *(d) How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
  *(1) Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981). Since the disability examiner's opinion was based on a review of Bordelon's medical records (Tr. pp. 22-23), the ALJ erred in relying on the claims examiner's opinion of Bordelon's residual functional capacity, since it was inconsistent with the well-supported opinion of Dr. Davidson, Bordelon's treating physician.

Therefore, there is no evidentiary basis in the medical records for the ALJ's finding that Bordelon can perform essentially the full range of light work.[2] The only medical evidence of Bordelon's ability to work, given her back problems and limited ability for fingering and grasping, indicates she cannot perform the full range of light work.[3] Since the ALJ's reliance on the

_____

[2] ALJ's have been warned by the courts against "playing doctor" and making their own independent medical assessments. <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002).

[3] S.S.R. 83-14 provides, "2. Light exertion combined with a nonexertional impairment. The major difference between sedentary and light work is that most light jobs-- particularly those at the unskilled level of complexity--require a person to be standing or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and

medical-vocational guidelines was inappropriate, substantial evidence does not support the final decision of the Commissioner that Bordelon is not disabled.

However, it is not necessary to remand the case to the Commissioner for a determination of whether there is any work Bordelon can do, given her impairments. Since the ALJ employed a VE to testify as to other types of work Bordelon can do, there is adequate evidence in the record on which to decide Bordelon's claim. Under all of the scenarios presented by the ALJ, the VE's answer was the same - there is no work which Bordelon can do at either the light or sedentary work levels (Tr. p. 230). Therefore, the only issue remaining is the amount of benefits Bordelon is entitled to.

Therefore, Bordelon's case should be remanded to the Commissioner for a determination of the amount of benefits to which she is entitled.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Bordelon's appeal be GRANTED, the final decision of the Commissioner be REVERSED, and Bordelon's claim for benefits be GRANTED.

---

turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

IT IS FURTHER RECOMMENDED that Bordelon's case be REMANDED to the Commissioner for a determination of the amount of disability insurance benefits to which Bordelon is entitled.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 18th day of April, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

18